IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. **05 - CR - 348** Wm

UNITED STATES OF AMERICA

Plaintiff,

v.

1.    GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,"

Defendant.

---

## INDICTMENT

18 U.S.C. §1341
18 U.S.C. §1343
18 U.S.C. §1957
26 U.S.C. §7201
18 U.S.C. §2

---

The Grand Jury charges that:

### COUNTS 1- 22
(Wire Fraud)

1.    From in or about February 2001, and continuing at least through January 14, 2002, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, the defendant,

**GODERICK AUGUSTUS BENJAMIN,**
a/k/a "Goody Benjamin,"

devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent material pretenses, representations and promises from Wal-Mart

1

Stores, Inc. Through such scheme, the defendant sought to misappropriate and obtain for his own use in excess of $456,605 and was able actually to realize approximately $417,583 (but, in any event, not less than $183,000).

## Background

At all times material to this Indictment:

2. The defendant, GODERICK AUGUSTUS BENJAMIN, owned and operated a business primarily involved in providing lawn care, landscaping and general outdoor maintenance services for commercial properties. Defendant BENJAMIN operated his business as a sole proprietorship under the name "High Energy Maintenance Co." (hereinafter, "High Energy").

3. Until in or about January 2001, defendant BENJAMIN operated this business out of Ada, Oklahoma, where he resided, and provided commercial landscaping, lawn care, and maintenance services for properties located primarily within the State of Oklahoma. In or about January or February 2001, defendant BENJAMIN re-located to the State of Colorado and began operating High Energy's business out of Denver and then Aurora, Colorado, where he resided.

4. Wal-Mart Stores, Inc. ("Wal-Mart") was a publicly traded corporation whose corporate headquarters and principal offices were located in Bentonville, Arkansas. Its primary business included operating chains of retail stores, under the

2

name "The Wal-Mart Stores," which offered a wide-range of consumer products and services. Wal-Mart operated such retail stores throughout the United States and in many foreign countries.

5.   Wal-Mart typically arranged for outside vendors or contractors to provide lawn care and other outdoor maintenance services for many of its retail stores.  Such outdoor maintenance services would include sweeping, cleaning and trash removal from store parking lots and, depending on weather conditions, lawn mowing and other lawn care and snow removal.  Wal-Mart typically contracted with these outside vendors and contractors to provide such services both with respect to commercial properties where it had actively operating stores (hereinafter, "active stores" or "open stores") and commercial properties which it still owned or leased, and for which it continued to have maintenance responsibilities, but on which the situated stores were no longer open to the public or otherwise operating (hereinafter, "dark stores" or "dark locations").

6.   Wal-Mart would have its local store managers directly arrange for and supervise the lawn care and outdoor maintenance for its open stores.   These local store managers, upon approving the work, would receive the outside vendors' and contractors' invoices and would forward them to Wal-Mart's corporate headquarters for payment.

3

7.    Wal-Mart would arrange for, and was responsible for
supervising, the lawn care and outdoor maintenance of the "dark
store" location where it was still responsible for maintenance
through the facilities maintenance department out of its
corporate headquarters in Bentonville, Arkansas.  Corporate
personnel within this department would arrange for and contract
directly with outside vendors and contractors to provide the lawn
care and outdoor maintenance work for these "dark store"
locations and would ultimately be responsible for overseeing,
authorizing and processing payment for the work.  The selected
outside vendors and contractors would typically submit written
proposals for their work and, after completing the work, would
send their invoices for services at these dark locations directly
to Wal-Mart's corporate headquarters, which would then send
payment on the invoices directly to the vendors and contractors.

8.    Defendant BENJAMIN and his company High Energy was one
of the outside vendors and contractors that provided lawn care
and outside maintenance services to Wal-Mart for both its "open
store" and "dark store" locations.  Until in or about early 2001,
when he re-located his business to the State of Colorado,
defendant BENJAMIN and his company serviced several of Wal-Mart's
"active stores" in Ada, Oklahoma and its surrounding areas.
BENJAMIN and his company also provided lawn care and other
outdoor maintenance services for Wal-Mart "dark store" locations

4

in various parts of Oklahoma and in nearby areas within the State
of Texas.  From at least in or about 1998 through 2000, defendant
BENJAMIN generated most of the revenue for High Energy from
billings to Wal-Mart for these services.

9.    Wal-Mart continued to be the most significant source of
defendant BENJAMIN's business revenue in 2001.  Upon re-locating
to Colorado, defendant BENJAMIN began to provide regular outdoor
maintenance services to two Wal-Mart open store locations in the
Denver, Colorado metropolitan area.  Defendant BENJAMIN also
continued to bill Wal-Mart for maintenance work at "dark store"
locations in Oklahoma and Texas and began billing Wal-Mart's
corporate office for maintenance work at other "dark store" or
non-operational locations throughout various of parts of the
United States.  As a result of these billings, defendant
BENJAMIN's revenues from Wal-Mart increased to a level which was
more than four times the revenues he had received from Wal-Mart
in the previous years for which it was his customer.

### The Scheme and Artifice

10.    It was a purpose and object of the scheme and artifice
to defraud and to obtain money and property by false and
fraudulent material pretenses, representations and promises for
the defendant, GODERICK AUGUSTUS BENJAMIN, to obtain money from
Wal-Mart by submitting invoices to Wal-Mart billing it for
fictitious lawn care and other outdoor maintenance services that

BENJAMIN falsely claimed he and his company, High Energy, had performed on Wal-Mart's behalf at various locations throughout the United States.

11.    It was part of the scheme and artifice to defraud and to obtain money and property by false and fraudulent material pretenses, representations and promises that the defendant BENJAMIN would and did hold his company out to Wal-Mart as being capable of providing lawn care and other outdoor maintenance services to various Wal-Mart store locations throughout the United States.  In order to induce Wal-Mart to contract with High Energy, defendant BENJAMIN would and did falsely represent and otherwise lead Wal-Mart into believing that he and his company, High Energy, could provide such services outside of their immediate areas of operation through a network of sub-contractors throughout the United States to which he and his company had access.  Defendant BENJAMIN would and did further falsely represent that he had relatives outside of his immediate operation who would be able to monitor the work of these sub-contractors.

12.    In truth and fact, as defendant BENJAMIN then well knew, High Energy had no established set of sub-contractors whom it employed as part of its business and defendant BENJAMIN would simply hire individuals locally to assist him on maintenance projects.  Nor did defendant Benjamin or his company have any

6

experience in providing, or business connections to provide,
maintenance services outside of their previous geographic areas
of operation.

13.   As a result of such misrepresentations, defendant
BENJAMIN induced employees within Wal-Mart's corporate
headquarters to refer to him opportunities for his company, High
Energy, to bid upon lawn care and other outdoor maintenance work
for dark store and other non-operating locations in areas outside
of those for which High Energy had previously provided
maintenance services. Such areas included , but were not limited
to, Tomah, Wisconsin; Wisconsin Rapids, Wisconsin; Ankeny, Iowa;
Cody, Wyoming; Saddlebrook, New Jersey; Fall River,
Massachusetts; Falmouth, Massachusetts; and Keene, New Hampshire.

14.   Defendant BENJAMIN would follow up on these referrals
by submitting scope of work proposals bidding on the referral
work.  Through the submission of these written proposals,
defendant BENJAMIN misled Wal-Mart personnel into believing that
High Energy could perform the requested maintenance work at an
acceptable price and thereby induced Wal-Mart to award High
Energy the maintenance work.

16.   It was further a part of the scheme and artifice to
defraud and to obtain money and property by false and fraudulent
material pretenses, representations and promises that — as the
scheme progressed — the defendant BENJAMIN would also solicit

Wal-Mart to have High Energy perform outdoor maintenance work at
dark store and other Wal-Mart locations throughout the United
States which he would suggest. As a result, defendant BENJAMIN
would submit written proposals and then induce Wal-Mart corporate
personnel to authorize High Energy to perform outdoor maintenance
at dark store locations where Wal-Mart, at the time, was not
actually responsible for providing maintenance, such as those
locations where Wal-Mart leased the property but the landlord
retained maintenance responsibilities; for store locations where
Wal-Mart had already arranged to provide such maintenance through
other, local contractors; and for dark store locations which Wal-
Mart had already sold to other parties.

        17.  As a further part of the scheme and artifice to defraud
and to obtain money and property by false and fraudulent material
pretenses, representations and promises, defendant BENJAMIN would
also induce Wal-Mart corporate personnel to agree to contract
and pay for High Energy to perform outdoor maintenance services
that were not warranted by existing weather conditions - such as
parking lot snow removal where no or minimal snow had fallen -
or outdoor maintenance services that were never warranted by
property conditions - such lawn cutting and lawn care for
locations that had no lawns.

        18.  It was a part of the scheme and artifice to defraud and
to obtain money and property by false and fraudulent material

pretenses, representations and promises that – having induced
Wal-Mart to authorize and contract to have High Energy to perform
outdoor maintenance services under the various circumstances
described above – defendant BENJAMIN, instead of undertaking to
perform the work, would then simply prepare an invoice falsely
representing that the contracted work had been completed by or
for High Energy and seeking payment for the contracted amount.

19.  Defendant BENJAMIN would then periodically submit the
false invoices billing for the fictitious work in batches
together with High Energy invoices for legitimate work he and his
employees performed for Wal-Mart, in an effort to conceal and
cause Wal-Mart not to detect his fraudulent billings.  Defendant
BENJAMIN would cause these batches of High Energy invoices to be
submitted to Wal-Mart by sending them through bulk facsimile
transmissions from his place of operation in Denver and Aurora,
Colorado to Wal-Mart's corporate headquarters in Bentonville,
Arkansas.

20.  It was a further part of the scheme and artifice to
defraud and to obtain money and property by false and fraudulent
material pretenses, representations and promises that – by
transmitting these false and legitimate High Energy invoices
together in batches – defendant BENJAMIN would induce and cause
Wal-Mart to pay the invoices in batches through corresponding
checks which Wal-Mart would mail to defendant BENJAMIN at a post

office box address which he maintained for High Energy in
Colorado.

21.    It was a further part of the scheme and artifice to
defraud and to obtain money and property by false and fraudulent
material pretenses, representations and promises that, in or
about December 2001, defendant BENJAMIN attempted to deflect
questions raised in Wal-Mart's corporate headquarters concerning
a particular false invoice he had submitted by maintaining that
that invoice was simply the product of clerical error.    In order
to deflect further attention, defendant BENJAMIN also sought to
reassure Wal-Mart that he did, in fact, have a set of sub-
contractors whom he had employed to perform the maintenance work
for which he had been billing Wal-Mart by promising to provide
Wal-Mart with a list of such sub-contractors.

22.    On or about the dates enumerated as to each count
below, in the State and District of Colorado, and elsewhere, for
the purpose of executing the aforesaid scheme and artifice to
defraud and for obtaining money and property by false and
fraudulent pretenses, representations and promises, and
attempting to do so, the defendant,

GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,",

did knowingly transmit and cause to be transmitted in interstate
commerce, from a place within the State of Colorado to
Bentonville, Arkansas, by means of wire communications, certain

10

signals and sounds, representing and constituting facsimiles of the following High Energy invoices billing Wal-Mart the amounts stated therein for the fictitious outdoor maintenance services described therein:

| COUNT | DATE | INVOICE NO. | INVOICE AMT. | DESCRIPTION OF INVOICED SERVICES |
|---|---|---|---|---|
| 1 | 2/13/01 | 1142 | $5,985.00 | Snow Removal in Tomah, WI |
| | | 1141 | $7,980.00 | Snow Removal in Ankeny, IA |
| 2 | 2/15/01 | 1147 | $6,150.00 | Snow Removal in Cody, WY |
| | | 1146 | $6,560.00 | Snow Removal in Wisconsin Rapids, WI |
| 3 | 3/4/01 | 1209 | $13,560.00 | Snow Removal in Tomah, WI |
| | | 1211 | $13,080.00 | Snow Removal in Wisconsin Rapids, WI |
| | | 1213 | $13,920.00 | Snow Removal in Cody, WY |
| | | 1212 | $12,240.00 | Snow Removal in Ankeny, IA |
| 4 | 3/17/01 | 1150 | $6,720.00 | Snow Removal in Ankeny, IA |
| | | 1218 | $1,500.00 | Parking Lot Sweeping in Tomah, WI |
| | | 1220 | $8,400.00 | Snow Removal in Tomah, WI |
| | | 1222 | $8,190.00 | Snow Removal in Tomah, WI |
| | | 1221 | $10,080.00 | Snow Removal in Cody, WY |
| | | 1223 | $500.00 | Parking Lot Sweeping in Cody, WY |
| | | 1224 | $1,500.00 | Parking Lot Sweeping in Ankeny, IA |
| | | 1225 | $10,080.00 | Snow Removal in Ankeny, IA |
| | | 1219 | $8,820.00 | Snow Removal in Wisconsin Rapids, WI |
| | | 1217 | $7,980.00 | Snow Removal in Wisconsin Rapids, WI |

|  |  | 1215 | $1,250.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
|---|---|---|---|---|
| 5 | 4/10/01 | 1231 | $7,790.00 | Snow Removal in Cody, WY |
|  |  | 1230 | $9,225.00 | Snow Removal in Tomah, WI |
|  |  | 1229 | $9,430.00 | Snow Removal in Wisconsin Rapids, WI |
|  |  | 1228 | $9,635.00 | Snow Removal in Ankeny, IA |
| 6 | 5/4/01 | 2013 | $6,970.00 | Snow Removal in Cody, WY |
|  |  | 2012 | $5,740.00 | Snow Removal in Ankeny, IA |
|  |  | 2011 | $6,150.00 | Snow Removal in Wisconsin Rapids, WI |
|  |  | 2010 | $6,150.00 | Snow Removal in Tomah, WI |
|  |  | 2009 | $1,250.00 | Parking Lot Sweeping in Tomah, WI |
|  |  | 2008 | $3,200.00 | Ground Maintenance in Tomah, WI |
|  |  | 2007 | $1,250.00 | Parking Lot Sweeping in Ankeny, IA |
|  |  | 2006 | $3,200.00 | Ground Maintenance in Ankeny, IA |
|  |  | 2005 | $1,250.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
|  |  | 2004 | $3,200.00 | Ground Maintenance in Wisconsin Rapids, WI |
|  |  | 2003 | $1,250.00 | Parking Lot Sweeping in Cody, WY |
|  |  | 2002 | $3,390.00 | Ground Maintenance in Cody, WY |
| 7 | 6/26/01 | 2036 | $1,600.00 | Ground Maintenance in Wisconsin Rapids, WI |
|  |  | 2035 | $1,600.00 | Ground Maintenance in Tomah, WI |
|  |  | 2034 | $1,000.00 | Parking Lot Sweeping in Ankeny, IA |
|  |  | 2030 | $1,695.00 | Ground Maintenance in Cody, WY |
|  |  | 2031 | $1,000.00 | Parking Lot Sweeping in Cody, WY |
|  |  | 2032 | $1,000.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |

| | | | | |
|---|---|---|---|---|
| | | 2033 | $1,600.00 | Ground Maintenance in Ankeny, IA |
| 8 | 7/17/01 | 2054 | $1,600.00 | Ground Maintenance in Wisconsin Rapids, WI |
| | | 2055 | $1,600.00 | Ground Maintenance in Tomah, WI |
| | | 2056 | $1,250.00 | Parking Lot Sweeping in Ankeny, IA |
| | | 2057 | $1,695.00 | Ground Maintenance in Cody, WY |
| | | 2058 | $1,000.00 | Parking Lot Sweeping in Cody, WY |
| | | 2059 | $1,000.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
| | | 2060 | $1,600.00 | Ground Maintenance in Ankeny, IA |
| 9 | 7/19/01 | 2082 | $1,000.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2080 | $1,000.00 | Parking Lot Sweeping in Keene, NH |
| | | 2079 | $1,000.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2077 | $1,000.00 | Parking Lot Sweeping in Falls River, MA |
| | | 2074 | $1,000.00 | Parking Lot Sweeping in Keene, NH |
| | | 2072 | $1,250.00 | Parking Lot Sweeping in Falls River, MA |
| | | 2069 | $1,000.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2067 | $1,250.00 | Parking Lot Sweeping in Falmouth, MA |
| 10 | 7/23/01 | 2068 | $1,600.00 | Ground Maintenance in Keene, NH |
| | | 2087 | $1,600.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2078 | $1,600.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2086 | $1,600.00 | Ground Maintenance in Falmouth, MA |
| | | 2085 | $1,600.00 | Ground Maintenance in Falmouth, MA |

| | | 2075 | $1,600.00 | Ground Maintenance in Keene, NH |
|---|---|---|---|---|
| | | 2073 | $1,600.00 | Ground Maintenance in Falls River, MA |
| | | 2076 | $1,600.00 | Ground Maintenance in Fall River, MA |
| 11 | 8/1/01 | 2093 | $1,600.00 | Ground Maintenance in Wisconsin Rapids, WI |
| | | 2094 | $1,600.00 | Ground Maintenance in Tomah, WI |
| | | 2099 | $1,000.00 | Parking Lot Sweeping in Cody, WY |
| | | 2101 | $1,000.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
| | | 2102 | $800.00 | Ground Maintenance in Ankeny, IA |
| | | 2103 | $750.00 | Parking Lot Sweeping in Ankeny, IA |
| | | 2104 | $1,695.00 | Ground Maintenance in Cody, WY |
| | | 2107 | $1,000.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2108 | $1,600.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2111 | $1,600.00 | Ground Maintenance in Falmouth, MA |
| | | 2112 | $1,600.00 | Ground Maintenance in Fall River, MA |
| | | 2113 | $1,000.00 | Parking Lot Sweeping in Keene, NH |
| | | 2114 | $1,000.00 | Parking Lot Sweeping in Fall River, MA |
| | | 2115 | $1,000.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2117 | $1,600.00 | Ground Maintenance in Keene, NH |
| 12 | 9/7/01 | 2120 | $800.00 | Ground Maintenance in Keene, NH |
| | | 2122 | $400.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2123 | $400.00 | Parking Lot Sweeping in Fall River, MA |
| | | 2124 | $400.00 | Parking Lot Sweeping in Keene, NH |

| | | | | |
|---|---|---|---|---|
| | | 2125 | $800.00 | Ground Maintenance in Fall River, MA |
| | | 2126 | $800.00 | Ground Maintenance in Falmouth, MA |
| | | 2127 | $400.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2128 | $800.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2129 | $800.00 | Ground Maintenance in Cody, WI |
| | | 2131 | $400.00 | Parking Lot Sweeping in Cody, WY |
| | | 2132 | $400.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
| | | 2134 | $800.00 | Ground Maintenance in Tomah, WI |
| | | 2135 | $800.00 | Ground Maintenance in Wisconsin Rapids, WI |
| 13 | 9/10/01 | 2140 | $1,600.00 | Ground Maintenance in Alamosa, CO |
| | | 2139 | $1,600.00 | Ground Maintenance in Alamosa, CO |
| | | 2138 | $1,600.00 | Ground Maintenance in Alamosa, CO |
| | | 2137 | $1,600.00 | Ground Maintenance in Alamosa, CO |
| | | 2143 | $1,000.00 | Parking Lot Sweeping in Alamosa, CO |
| | | 2144 | $1,000.00 | Parking Lot Sweeping in Alamosa, CO |
| | | 2145 | $1,000.00 | Parking Lot Sweeping in Alamosa, CO |
| | | 2146 | $1,000.00 | Parking Lot Sweeping in Alamosa, CO |
| 14 | 9/28/01 | 2177 | $400.00 | Parking Lot Sweeping in Alamosa, CO |
| | | 2175 | $800.00 | Ground Maintenance in Alamosa, CO |
| | | 2173 | $800.00 | Ground Maintenance in Wisconsin Rapids, WI |
| | | 2172 | $800.00 | Ground Maintenance in Tomah, WI |

| | | | | |
|---|---|---|---|---|
| | | 2170 | $400.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
| | | 2169 | $400.00 | Parking Lot Sweeping in Cody, WY |
| | | 2166 | $800.00 | Ground Maintenance in Cody, WY |
| | | 2165 | $800.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2164 | $400.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2163 | $800.00 | Ground Maintenance in Falmouth, MA |
| | | 2162 | $400.00 | Parking Lot Sweeping in Keene, NH |
| | | 2161 | $400.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2160 | $400.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2159 | $800.00 | Ground Maintenance in Fall River, MA |
| | | 2157 | $800.00 | Ground Maintenance in Keene, NH |
| 15 | 10/3/01 | 2188 | $7,656.00 | Snow Removal in Salida, CO |
| | | 2189 | $7,424.00 | Snow Removal in Alamosa, CO |
| 16 | 10/11/01 | 2191 | $4,266.00 | Snow Removal in Salida, CO |
| | | 2192 | $4,320.00 | Snow Removal in Alamosa, CO |
| 17 | 10/15/01 | 2194 | $8,640.00 | Snow Removal in Cody, WY |
| 18 | 10/29/01 | 2203 | $9,720.00 | Snow Removal in Salida, CO |
| | | 2200 | $6,912.00 | Snow Removal in Cody, WY |
| | | 2199 | $5,400.00 | Snow Removal in Cody, WY |
| | | 2204 | $800.00 | Ground Maintenance in Keene, NH |
| | | 2206 | $800.00 | Ground Maintenance in Fall River, MA |
| | | 2207 | $800.00 | Ground Maintenance in Falmouth, MA |
| | | 2208 | $800.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2209 | $800.00 | Ground Maintenance in Cody, WY |

| | | | | |
|---|---|---|---|---|
| | | 2211 | $800.00 | Ground Maintenance in Tomah, WI |
| | | 2212 | $800.00 | Ground Maintenance in Wisconsin Rapids, WI |
| | | 2214 | $800.00 | Ground Maintenance in Alamosa, CO |
| | | 2215 | $400.00 | Parking Lot Sweeping in Cody, WY |
| | | 2216 | $400.00 | Parking Lot Sweeping in Wisconsin Rapids, WI |
| | | 2218 | $400.00 | Parking Lot Sweeping in Alamosa, CO |
| | | 2225 | $400.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2226 | $400.00 | Parking Lot Sweeping in Fall River, MA |
| | | 2227 | $400.00 | Parking Lot Sweeping in Keene, NH |
| | | 2228 | $400.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| 19. | 11/5/01 | 2229 | $6,372.00 | Snow Removal in Alamosa, CO |
| | | 2230 | $6,102.00 | Snow Removal in Salida, CO |
| | | 2231 | $6,480.00 | Snow Removal in Cody, WY |
| 20. | 11/12/01 | 2234 | $6,966.00 | Snow Removal in Keene, NH |
| | | 2233 | $6,804.00 | Snow Removal in Aurora, CO |
| 21. | 12/14/01 | 2340 | $400.00 | Parking Lot Sweeping in Keene, NH |
| | | 2341 | $400.00 | Parking Lot Sweeping in Fall River, MA |
| | | 2342 | $400.00 | Parking Lot Sweeping in Falmouth, MA |
| | | 2359 | $400.00 | Ground Maintenance in Keene, NH |
| | | 2365 | $800.00 | Ground Maintenance in Cody, WY |
| | | 2366 | $800.00 | Ground Maintenance in Saddlebrook, NJ |
| | | 2367 | $800.00 | Ground Maintenance in Falmouth, MA |

| | | 2368 | $800.00 | Ground Maintenance in Fall River, MA |
| | | 2397 | $5,073.00 | Snow Removal in Miami/Ada, OK |
| | | 2352 | $10,773.00 | Snow Removal in Alamosa, CO |
| | | 2354 | $15,960.00 | Snow Removal in Cody, WY |
| | | 2351 | $9,576.00 | Snow Removal in Salida, CO |
| 22 | 1/14/02 | 2348 | $400.00 | Parking Lot Sweeping in Cody, WY |
| | | 2349 | $400.00 | Parking Lot Sweeping in Cody, WY |
| | | 2358 | $400.00 | Parking Lot Sweeping in Saddlebrook, NJ |
| | | 2361 | $800.00 | Ground Maintenance in Alamosa, CO |
| | | 2362 | $800.00 | Ground Maintenance in Wisconsin Rapids, WI |
| | | 2363 | $800.00 | Ground Maintenance in Tomah, WI |

All in violation of Title 18, United States Code, Section
1343.

## COUNTS 23 - 48
### (Mail Fraud)

23.   The allegations contained in paragraphs 1 through 21 of
this Indictment are hereby re-alleged as if set out in full and
incorporated herein by reference.

24.   On or about the dates enumerated as to each count
below, in the State and District of Colorado, and elsewhere, for
the purpose of executing the aforesaid scheme and artifice to
defraud and attempting to do so, the defendant,

GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,"

18

did knowingly cause Wal-Mart to place in a post office or
authorized depository for mail matter, a matter and thing to be
sent and delivered by the United States Postal Service, and
knowingly caused to be delivered by mail according to the
direction thereon, the following Wal-Mart checks addressed to
"High Energy Maintenance Co., Goderick Benjamin, P.O. Box 850,
Eastlake, CO 80614-0850":

| COUNT | DATE | WAL-MART CK. NO. | AMOUNT |
|-------|------|------------------|--------|
| 23 | 3/5/2001 | 0082240 | $26,676.00 |
| 24 | 3/22/2001 | 0082488 | $52,800.00 |
| 25 | 4/26/2001 | 0084756 | $47,740.00 |
| 26 | 4/30/2001 | 0084790 | $36,080.00 |
| 27 | 5/1/2001 | 0084814 | $29,160.00 |
| 28 | 5/25/2001 | 0086015 | $53,561.00 |
| 29 | 7/17/2001 | 0087628 | $12,945.00 |
| 30 | 7/26/2001 | 3453045 | $3,200.00 |
| 31 | 7/26/2001 | 0088632 | $11,245.00 |
| 32 | 7/27/2001 | 3460256 | $19,025.00 |
| 33 | 8/13/2001 | 3536137 | $11,325.00 |
| 34 | 8/13/2001 | 0088828 | $16,645.00 |
| 35 | 9/18/2001 | 3701395 | $4,800.00 |
| 36 | 9/20/2001 | 0090137 | $6,200.00 |
| 37 | 9/20/2001 | 3714412 | $11,200.00 |
| 38 | 10/16/2001 | 3839556 | $18,340.00 |
| 39 | 10/18/2001 | 3851730 | $15,586.00 |
| 40 | 10/18/2001 | 0091503 | $13,840.00 |

| 41 | 11/12/2001 | 3969145 | $8,400.00 |
| 42 | 11/12/2001 | 0092650 | $28,712.00 |
| 43 | 11/14/2001 | 3981567 | $22,194.00 |
| 44 | 11/21/2001 | 0913671 | $6,804.00 |
| 45 | 11/21/2001 | 4017865 | $6,966.00 |
| 46 | 11/21/2001 | 0092772 | $4,560.00 |
| 47 | 12/19/2001 | 4157263 | $2,400.00 |
| 48 | 12/19/2001 | 0093988 | $1,600.00 |

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 49 - 54
(Monetary Transactions in Property
Derived From Specified Unlawful Activity)

25.   The allegations contained in paragraphs 1 through 22 and 24 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

26.   On or about the dates alleged below as to each Count, in the State and District of Colorado, and elsewhere, the defendant,

**GODERICK AUGUSTUS BENJAMIN,**
a/k/a "Goody Benjamin,"

did knowingly engage and attempt to engage in a monetary transaction affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, namely, wire fraud and mail fraud, in violation of Title 18,

United States Code, Sections 1343, 1341 and 2, as set forth in
Count 1 through Counts 48 of this Indictment; that is, the
defendant transferred, and caused to be transferred, proceeds he
realized from High Energy invoices billing Wal-Mart for
fictitious maintenance services as a result of the mail fraud and
wire fraud, through the transactions described below:

| Count | Date | Transaction |
|-------|------|-------------|
| 49 | 5/1/01 | Payment of Vectra Bank Check No. 589 (dated April 14, 2001) in the amount of $43,134.20, payable to "Burt", drawn on Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance |
| 50 | 5/9/01 | Payment of Vectra Bank Check No. 621 (dated May 7, 2001) in the amount of $20,000, payable to Eduard Mayster, drawn on Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance |
| 51 | 8/3/01 | Internal Debit of $38,005 from Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance, to purchase Vectra Bank Official Bank Check No. 718512104, in the amount of $38,000, payable to Kuni Lexus |
| 52 | 10/22/01 | Provision of Vectra Bank Check No. 2235 in the amount of $16,000, payable to Cash, drawn on Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance, toward the purchase of Vectra Bank Official Bank Check No. 5656789372, in the amount of $18,877, payable to the Denver Nuggets |

| 53 | 10/24/01 | Internal Debit of $18,165 from Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance, for the purchase of three official bank checks issued by Vectra Bank totaling $15,100 and the provision of $3,050 in cash |
|----|----------|---|
| 54 | 11/30/01 | Provision of Vectra Bank Check No. 774 in the amount of $10,843.06, payable to Vectra Bank, drawn on Vectra Bank Account No. 403-800-2251, in the name of Benjamin Goderick, Jr., High Energy Maintenance, for the purchase of five official bank checks issued by Vectra Bank totaling $10,243.06 and the provision of $600 in cash |

In violation of Title 18 of the United States Code, Section 1957.

## COUNT 55
(Evasion of Income Tax Assessment for 1998)

27.    From on or about January 1, 1998 and continuing through at least on or about June 26, 2002, the exact dates being unknown to the Grand Jury, in the Western District of Oklahoma, in the State and District of Colorado, and elsewhere the defendant,

### GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,"

did willfully attempt to evade and defeat the assessment of a substantial amount of income and self-employment tax due and owing by him and his spouse to the United States of America for calendar year 1998, in an amount of at least approximately $6,846, by failing to make an income tax return on or before April 15, 1999, as required by law, to any proper officer of the

22

Internal Revenue Service ("IRS"), by failing to pay to the IRS said income tax and self-employment tax, and by engaging in and causing the following acts:

A.   Paying for and causing payments to be made for personal expenses out of a bank account used for High Energy, funded by business receipts of High Energy;

B.   Paying for and causing payment of many of the business expenses of High Energy using cash, including paying employees in cash and with money orders;

C.   Paying for and causing payment of many personal expenses to be made using cash, writing checks to cash on business accounts and otherwise living a cash lifestyle;

D.   Directly cashing or causing others to cash checks received by him as business receipts for High Energy and using the cash proceeds interchangeably for business and personal expenses;

E.   Failing to maintain records for High Energy which would sufficiently document its business expenses and the use of its business receipts; and

F.   Making the following false and misleading statements to special agents of the Criminal Investigation Division of the Internal Revenue Service ("IRS-CID") during an interview on June 26, 2002:

   1.   He had a joint federal income tax return prepared for 1998 and caused the return to be signed and filed with the IRS;

   2.   He and his spouse paid the IRS additional taxes as a result of the 1998 return;

   3.   He did not have possession of any tax returns, cancelled checks, receipts, bank records or business records for High Energy, while it operated out of Oklahoma, because he left all of his records with his spouse when he separated from her and moved to Colorado in 2001; and

23

4.  He did not have regular employees for High Energy,
    mostly did the work of High Energy on his own and
    would only occasionally hire friends to help him
    on an ad hoc basis, and could not remember the
    names of any of the friends he hired to help him
    in the business.

In violation of Title 26, United States Code, Section 7201.

## COUNT 56
(Evasion of Income Tax Assessment for 1999)

28.  From on or about January 1, 1999 and continuing through

at least on or about June 26, 2002, the exact dates being unknown

to the Grand Jury, in the Western District of Oklahoma, in the

State and District of Colorado, and elsewhere the defendant,

### GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,"

did willfully attempt to evade and defeat the assessment of a

substantial amount of income and self-employment tax due and

owing by him and his spouse to the United States of America for

calendar year 1999, in an amount of at least approximately

$17,392, by failing to make an income tax return on or before

April 15, 2000, as required by law, to any proper officer of the

Internal Revenue Service ("IRS"), by failing to pay to the IRS

said income tax and self-employment tax, and by engaging in and

causing the following acts:

A.  Paying for and causing payments to be made for personal
    expenses out of a bank account used for High Energy,
    funded by business receipts of High Energy;

B.  Paying for and causing payment of many of the business
    expenses of High Energy using cash, including paying
    employees in cash and with money orders;

24

C.   Paying for and causing payment of many personal
     expenses to be made using cash, writing checks to cash
     on business accounts and otherwise living a cash
     lifestyle;

D.   Directly cashing or causing others to cash checks
     received by him as business receipts for High Energy
     and using the cash proceeds interchangeably for
     business and personal expenses;

E.   Failing to maintain records for High Energy which would
     sufficiently document its business expenses and the use
     of its business receipts; and

F.   Making the following false and misleading statements to
     special agents of the Criminal Investigation Division
     of the Internal Revenue Service ("IRS-CID") during an
     interview on June 26, 2002:

     1.   He had a joint federal income tax return prepared
          for 1999 and caused the return to be signed and
          filed with the IRS;

     2.   He and his spouse paid the IRS additional taxes as
          a result of the 1999 return;

     3.   He did not have possession of any tax returns,
          cancelled checks, receipts, bank records or
          business records for High Energy, while it
          operated out of Oklahoma, because he left all of
          his records with his spouse when he separated from
          her and moved to Colorado in 2001; and

     4.   He did not have regular employees for High Energy,
          mostly did the work of High Energy on his own and
          would only occasionally hire friends to help him
          on an ad hoc basis, and could not remember the
          names of any of the friends he hired to help him
          in the business.

In violation of Title 26, United States Code, Section 7201.

25

## COUNT 57
### (Evasion of Income Tax Assessment for 2000)

29.   From on or about January 1, 2000 and continuing through
at least on or about June 26, 2002, the exact dates being unknown
to the Grand Jury, in the Western District of Oklahoma, in the
State and District of Colorado, and elsewhere the defendant,

### GODERICK AUGUSTUS BENJAMIN,
### a/k/a "Goody Benjamin,"

did willfully attempt to evade and defeat the assessment of a
substantial amount of income and self-employment tax due and
owing by him and his spouse to the United States of America for
calendar year 2000, in an amount of at least approximately
$5,858, by failing to make an income tax return on or before
April 15, 2001, as required by law, to any proper officer of the
Internal Revenue Service ("IRS"), by failing to pay to the IRS
said income tax and self-employment tax, and by engaging in and
causing the following acts:

    A.    Paying for and causing payments to be made for personal
           expenses out of a bank account used for High Energy,
           funded by business receipts of High Energy;

    B.    Paying for and causing payment of many of the business
           expenses of High Energy using cash, including paying
           employees in cash and with money orders;

    C.    Paying for and causing payment of many personal
           expenses to be made using cash, writing checks to cash
           on business accounts and otherwise living a cash
           lifestyle;

    D.    Directly cashing or causing others to cash checks
           received by him as business receipts for High Energy

and using the cash proceeds interchangeably for business and personal expenses;

E.  Failing to maintain records for High Energy which would sufficiently document its business expenses and the use of its business receipts; and

F.  Making the following false and misleading statements to special agents of the Criminal Investigation Division of the Internal Revenue Service ("IRS-CID") during an interview on June 26, 2002:

   1.  He had a joint federal income tax return prepared for 2000 and caused the return to be signed and filed with the IRS;

   2.  He did not have possession of any tax returns, cancelled checks, receipts, bank records or business records for High Energy, while it operated out of Oklahoma, because he left all of his records with his spouse when he separated from her and moved to Colorado in 2001; and

   3.  He did not have regular employees for High Energy, mostly did the work of High Energy on his own and would only occasionally hire friends to help him on an ad hoc basis, and could not remember the names of any of the friends he hired to help him in the business.

In violation of Title 26, United States Code, Section 7201.

## COUNT 58
(Evasion of Income Tax Assessment for 2001)

30.  From on or about January 1, 2001 and continuing through at least on or about June 26, 2002, the exact dates being unknown to the Grand Jury, in the Western District of Oklahoma, in the State and District of Colorado, and elsewhere the defendant,

GODERICK AUGUSTUS BENJAMIN,
a/k/a "Goody Benjamin,"

27

did willfully attempt to evade and defeat the assessment of a substantial amount of income and self-employment tax due and owing by him to the United States of America for calendar year 2001, in an amount of at least approximately $99,300, by failing to make an income tax return on or before April 15, 2002, as required by law, to any proper officer of the Internal Revenue Service ("IRS"), by failing to pay to the IRS said income tax and self-employment tax, and by engaging in and causing the following acts:

A.  Paying for and causing payments to be made for personal expenses out of a bank account set up for High Energy, funded by business receipts of High Energy;

B.  Paying for and causing payment of many of the business expenses of High Energy using cash, including paying employees in cash and with money orders;

C.  Paying for and causing payment of many personal expenses to be made using cash, writing checks to cash on business accounts and otherwise living a cash lifestyle;

D.  Directly cashing or causing others to cash checks received by him as business receipts for High Energy and using the cash proceeds interchangeably for business and personal expenses;

E.  Failing to maintain records for High Energy which would sufficiently document its business expenses and the use of its business receipts; and

F.  Making the following false and misleading statements to special agents of the Criminal Investigation Division of the Internal Revenue Service ("IRS-CID") during an interview on June 26, 2002:

1.  He did not have possession of any cancelled checks, receipts, bank records or business records

28

for High Energy for the time period he operated
the business in Colorado;

2.    He did not have any bank accounts for himself or
his business outside of the State of Oklahoma,
concealing through such representation the
existence and identity of bank accounts he
maintained for himself and his business in 2001 at
Vectra Bank; and

3.    He did not have regular employees for High Energy,
mostly did the work of High Energy on his own and
would only occasionally hire friends to help him
on an ad hoc basis, and could not remember the
names of any of the friends he hired to help him
in the business.

In violation of Title 26, United States Code, Section 7201.


A TRUE BILL


FOREPERSON


WILLIAM J. LEONE
Acting United States Attorney


By: KENNETH M. HARMON
Assistant U.S. Attorney


29

(Rev. 05/05)                                          DATE:    July 27, 2005

DEFENDANT:        Goderick Augustus Benjamin

DOB:

ADDRESS:

COMPLAINT FILED? _____ YES   X   NO

    IF YES, PROVIDE MAGISTRATE CASE NUMBER: _____
    IF NO, PROCEED TO "OFFENSE" SECTION

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT? _____ YES _____ NO

    IF NO, A NEW WARRANT IS REQUIRED

    OFFENSES:          Counts 1-22
                Wire Fraud
                18 U.S.C. §1343

                Counts 23-48
                Mail Fraud
                18 U.S.C. §1341

                Counts 49-54
                Monetary Transactions
                In Property Derived From
                Specified Unlawful Activity
                18 U.S.C. §1957

                Counts 55-58
                Tax Evasion
                26 U.S.C. §7201

LOCATION OF OFFENSE:

                Denver and Arapahoe Counties, Colorado and elsewhere

PENALTIES:

                Counts 1-48

Per Count, NMT 5 years imprisonment; $250,000 fine, or both; $100 Special Assessment, Restitution.

### Counts 49-54

Per Count, NMT 10 years imprisonment; $250,000 fine or an alternate fine of twice the amount of the criminally derived property in the transaction; or both imprisonment and a fine; $100 Special Assessment.

### Counts 55-58

Per Count, NMT 5 years imprisonment; $250,000 fine, or both; together with costs of prosecution; $100 Special Assessment.

AGENT:                Jennifer A. Brake, Special Agent
                      Internal Revenue Service, Criminal Investigation Division
                      Oklahoma City, Oklahoma

AUTHORIZED BY:        Kenneth M. Harmon
                      Assistant U.S. Attorney

ESTIMATED TIME OF TRIAL:

_____ five days or less    __X__ over five days    _____ other

THE GOVERNMENT

_____ will seek pretrial detention in this case  __X__ will not seek pretrial detention in this case

The statutory presumption of detention is or is not applicable to this defendant. (Circle one)

OCDETF CASE:    _____ Yes    __X__    No